Case 3:24-cv-00229   Document 21   Filed on 04/21/25 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
April 21, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:24-cv-00229 |
| | § | |
| BEACH BUMS BAR LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION

Plaintiff Joe Hand Promotions, Inc. ("JHP") has filed a Motion for Final Default Judgment against Defendants Beach Bums Bar LLC d/b/a Beach Bums Barcadia and d/b/a Barcadia Sports Bar & Pool Hall ("Beach Bums"), Cason Cordova a/k/a Cason McDonald ("Cordova"), and James McDonald ("McDonald"). *See* Dkt. 14. I recommend the motion be granted.

### BACKGROUND[1]

JHP is in the business of marketing and sublicensing commercial exhibitions of pay-per-view prizefight events. JHP possessed the priority rights to exhibit and sublicense the right to exhibit the August 29, 2021 closed-circuit broadcast of the Jake Paul vs. Tyron Woodley boxing match (the "Program"), including all undercard bouts and commentary. The Program broadcast originated via satellite uplink and was subsequently re-transmitted interstate to cable systems and television companies via satellite signal. The interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public on the scheduled date of the Program. In Texas, the Program was legally available to commercial establishments only through an agreement with JHP.

---

[1] The factual allegations in this section are taken from Plaintiff's Complaint. *See* Dkt. 1.

On the date of the Program, Beach Bums owned and operated the establishment known as Beach Bums Barcadia/Barcadia Sports Bar & Pool Hall located at 209 E. Park, Freeport, Texas 77541 (the "Establishment"). On the date of the Program, Cordova and McDonald were members, managers, officers, and/or principals of Beach Bums with direct financial interest in, and the right and ability to supervise the activities of, the Establishment. Defendants chose not to contract with JHP and pay the proper commercial sublicense fee. Instead, Defendants unlawfully obtained and exhibited the Program at the Establishment.

On August 7, 2024, JHP sued Defendants for the unauthorized and illegal interception and/or receipt and exhibition of the Program at the Establishment. Beach Bums Bar was served with a summons and JHP's complaint on August 14, 2024. *See* Dkt. 7. Cordova and McDonald were served with a summons and JHP's complaint on September 9, 2024. *See* Dkts. 8–9. The Clerk entered default against Defendants on October 31, 2024. *See* Dkt. 12. On January 23, 2025, JHP moved for default judgment. *See* Dkt. 14. Defendants were properly served with JHP's Motion for Default Judgment on January 25 and January 28, 2025. *See* Dkt. 20 at 2–3. JHP seeks default judgment against Defendants for piracy pursuant to the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 605. JHP claims statutory damages in the amount of $60,000.00; attorney's fees in the amount of $2,600.00; and costs in the amount of $940.00.

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). After the clerk's entry of default, a "plaintiff may apply for a judgment based on such default. This is a *default judgment*." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A district court may

enter a default judgment only if there is "a sufficient basis in the pleadings for the judgment [to be] entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The entry of a default judgment is generally committed to the discretion of the district court. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

## ANALYSIS

I must follow a three-part test to determine whether to enter a default judgment. *See United Cmty. Bank, Inc. v. Loven Bf, Inc.*, No. 3:20-cv-00076, 2020 WL 5045310, at *1 (S.D. Tex. July 22, 2020). The test requires me to: (1) "consider whether the entry of a default judgment is procedurally warranted"; (2) "assess the substantive merits of [JHP]'s claims to determine whether there is a sufficient basis in the pleadings for the judgment"; and (3) "determine what relief, if any, [JHP] should receive." *Id.*

### A.   DEFAULT JUDGMENT IS PROCEDURALLY WARRANTED

To determine whether to enter default judgment, the Fifth Circuit requires district courts to examine: (1) whether there are material issues of fact; (2) "whether there has been substantial prejudice"; (3) "whether the grounds for default are clearly established"; (4) "whether the default was caused by a good faith mistake or excusable neglect"; (5) "the harshness of a default judgment"; and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893.

Applying the *Lindsey* factors, I conclude that default judgment against Defendants is appropriate. First, there are no material issues of fact. *See Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability."). Second, there is no prejudice against Defendants. Beach Bums is not a natural person and neither Cordova nor McDonald is a minor, incompetent, or active duty servicemember. *See* Dkt. 10-1 at 2. Each defendant was properly served with a summons and the Complaint, *see* Dkts. 7–9, and chose not to appear or answer. Moreover, each defendant was

3

properly served with a copy of JHP's Motion for Default Judgment. *See* Dkt. 20. Third, the grounds for default are clearly established. *See* Dkts. 10, 12. Fourth, I am unaware of any good faith mistake or excusable neglect that militates against default. Fifth, I do not find a default judgment to be harsh when Defendants have failed to appear or answer more than seven months after being served with process. Sixth, I am aware of no facts that would cause me to set aside the default judgment should it be challenged at a later date.

**B.  THERE IS SUFFICIENT BASIS IN THE COMPLAINT FOR THE ENTRY OF DEFAULT JUDGMENT**

Next, I must assess the substantive merits of JHP's claim. *See Nishimatsu*, 515 F.2d at 1206. Although Defendants are deemed to have admitted the allegations in the Complaint as a result of their default, I must still review the pleadings to determine whether there is "a sufficient basis in the pleadings for the judgment [to be] entered." *Id*. "When considering whether such a basis is presented, a court accepts as true the complaint's well-pleaded factual allegations—except regarding damages—and must determine whether those pleaded facts state a claim upon which relief may be granted." *Shaw v. Galo Equip. & Constr., LLC*, No. 5-19-cv-00859, 2020 WL 3118928, at *2 (W.D. Tex. June 12, 2020); *see also United States ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages.").

JHP is entitled to a default judgment against Defendants because the facts alleged in the Complaint state a piracy claim upon which relief may be granted. "The FCA prohibits the unauthorized interception and broadcast of either satellite or cable transmissions." *Joe Hand Promotions, Inc. v. Macias*, No. 4:11-cv-1773, 2012 WL 950157, at *2 (S.D. Tex. Mar. 19, 2012). Specifically, the FCA provides:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having

4

> become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). "[The FCA] is a strict liability statute." *Joe Hand Promotions, Inc. v. Omarise Bar & Grill Inc.*, No. 4:23-cv-02291, 2024 WL 4594279, at *1 (S.D. Tex. Oct. 28, 2024) (citing *KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)). "Because the FCA is a strict-liability statute, JHP need only show that (1) the programs were shown in Defendants' establishment; (2) the programs were shown without JHP's authorization; and (3) JHP is the exclusive licensee." *Joe Hand Promotions, Inc. v. BH Lounge of DFW, LLC*, No. 4:24-cv-00409, 2025 WL 361818, at *4 (N.D. Tex. Jan. 14, 2025).

JHP is entitled to default judgment because it has demonstrated each of these elements as to each defendant. First, JHP alleges that the Program was shown in the Establishment. *See* Dkt. 1 at 5; Dkt. 14-7 (affidavit of eyewitness Eric Kloss who visited the Establishment while Defendants displayed the boxing match). Second, JHP alleges that it did not authorize Defendants to show the fight, stating that "Defendants . . . chose not to contract with [JHP] and pay the proper commercial sublicense fee to [JHP]." Dkt. 1 at 4; *see also* Dkt. 14-4 at 5 (affidavit of JHP's President that "[a]t no time did [Beach Bums] ever lawfully license the [Program] from [JHP]"). Third, JHP alleges that it was the exclusive license-holder and attaches to its motion for default judgment evidence of its ownership of these licenses. *See* Dkt. 14-5 (copy of JHP's Commercial Licensing Agreement for the Program). "Regarding [Cordova and McDonald's] individual liability under § 605, [JHP] may hold [them] vicariously liable if it demonstrates that [they] (1) had a right and ability to supervise the exhibition, and (2) had a direct financial interest in the exploitation." *J & J Sports Prods., Inc. v. Little Napoli, Inc.*, No. 4:13-cv-1237, 2014 WL 3667903, at *2 (S.D. Tex. July 22, 2014). JHP has alleged that both

5

Cordova and McDonald "had a right and ability to supervise the activities of the Establishment on the date of the Program" and "had an obvious and direct financial interest in the activities of the Establishment on the date of the Program." Dkt. 1 at 3–4; *see also* Dkt. 14-3 at 1 (showing that Cordova and McDonald are the managing members of Beach Bums). "By virtue of their default, Defendants have admitted to the truth of these allegations. The court therefore finds that [JHP] has established Defendants' joint and several liability under § 605 of the FCA." *Joe Hand Promotions, Inc. v. Fusion Hookah, LLC*, No. A-16-cv-1339, 2018 WL 1887293, at *3 (W.D. Tex. Feb. 1, 2018). Thus, JHP is entitled to default judgment as to Cordova and McDonald as well as Beach Bums.

C. **COMPUTATION OF DAMAGES**

Having determined that a default judgment is appropriate, the only remaining issue I must address relates to an award of damages. *See Pope v. United States*, 323 U.S. 1, 12 (1944) (After granting default judgment, it is the district court's duty "to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

To start, I note that a district court has "wide latitude" in determining whether an evidentiary hearing should be conducted when awarding damages after a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). When the damages sought can be demonstrated "by detailed affidavits establishing the necessary facts," an evidentiary hearing would serve no useful purpose. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). That is precisely the situation here. Because I can calculate the amount of damages by reviewing the pleadings and supporting documents on file, there is simply no need to "jump through the hoop of an evidentiary hearing." *James*, 6 F.3d at 311.

1. ***Statutory Damages***

Under the FCA, JHP has the option of electing to pursue actual or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i). JHP has opted for the latter, which means it "may recover an award of statutory damages for each

violation . . . involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." *Id.* § 605(e)(3)(C)(i)(II). The amount of a statutory damages awarded lies in the sound discretion of the district court. *See Dish Network, L.L.C. v. Del Carmen*, No. SA-19-cv-01171, 2020 WL 1227311, at *6 (W.D. Tex. Mar. 13, 2020).

JHP seeks the maximum available award of statutory damages in the amount of $10,000, arguing that, as a result of Defendants' actions, it lost out on the "value, benefits and profits [it would have] derived from the unauthorized broadcast of the Program" and failed to achieve "the value of [the] business investment, business opportunities, reputation, and goodwill" it might have otherwise enjoyed. Dkt. 14 at 18 (quotations omitted).

JHP presents evidence that commercial establishments wishing to broadcast the Program were required to pay JHP a commercial sublicense fee. The sublicensing fee was based on the capacity of the particular venue showing the event—not the number of patrons who actually watched the event.[2] Here, the estimated capacity of the Establishment was 200 people. *See* Dkt. 14-7 at 1. For establishments with a capacity of between 176 to 200 people, the sublicensing fee charged by PHP to broadcast the Program was $1,750. *See* Dkts. 14-4 at 3 (affidavit of JHP's President discussing the fee structure); Dkt. 14-6 at 1 (the rate card identifying the fees venues were charged to broadcast the Program).

Because one of the objectives of the FCA is to deter future violations of the statute, "[m]erely requiring [Defendants] to pay the price [they] would have been charged to obtain legal authorization to display the [Program] does nothing to accomplish this objective of the statute." *Entm't by J&J, Inc.* v. *Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002). "There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Id.* (quotation omitted).

---

[2] The record establishes that only 25 people actually viewed the Program at the Establishment. *See* Dkt. 14-7 at 1.

7

Considering the need to deter future violations and the fact that the sublicensing fee here would have been $1,750 had Defendants paid to legally broadcast the Program, I find that statutory damages in the amount of $5,250 (three times the cost had Defendants followed the law) is reasonable. *See J&J Sports Prods., Inc. v. Catsup Burger Bar*, No. 3:17-cv-1011, 2018 WL 1942228, at *3 (N.D. Tex. Apr. 25, 2018) ("Courts determine the reasonable amount of statutory damages by adding what the establishment would have paid in sub-licensing fees and an amount that the Court, in its discretion, deems reasonable to deter future violation[s].").

### 2. *Enhanced Damages for Willful Violation*

A district court may enhance its award of statutory damages by an amount up to $100,000 per violation if the plaintiff establishes that the violation was both "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). JHP seeks enhanced damages in the amount of $50,000.00 (five times its requested statutory damages award of $10,000.00). *See* Dkt. 14 at 23. I find that the allegations in JHP's Complaint demonstrate that Defendants' illegal conduct was done willfully and for the purposes of their direct or indirect commercial advantage or private financial gain. *See Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

"Though there is little guidance how the Court should weigh certain factors when calculating additional damages, many courts have applied a multipliers of three to five when faced with a defendant who broadcast an event willfully for his own commercial benefit." *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-cv-0889-B, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014). Egregious conduct, such as charging patrons for the unauthorized broadcast or advertising it, usually receives

8

a five times multiplier. *See id.* (collecting cases). JHP alleges that Defendants advertised the Program on social media, showed the Program on multiple television sets, profited from drinks sold during the Program, and advertised other of JHP's proprietary programming to be broadcast at the Establishment on social media. *See* Dkt. 14 at 21–22. Given these allegations, I have no trouble recommending a five times multiplier be applied here. Five times the statutory damages award of $5,250 equals $26,250. Accordingly, I recommend an enhanced damages award for willful violation in the amount of $26,250.00.

### 3. *Attorneys' Fees and Costs*

Because JHP has prevailed on its piracy claim against Defendants, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees" to JHP. 47 U.S.C. § 605(e)(3)(B)(iii). An affidavit from JHP's counsel establishes that JHP incurred $2,600.00 in reasonable and necessary attorneys' fees, and $940.00 in costs. *See* Dkt. 14-12.

## CONCLUSION

For the reasons set forth above, I recommend the court grant JHP's Motion for Default Judgment (Dkt. 14), enter judgment in favor of JHP and against Defendants, and award to JHP:

- statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $5,250.00;
- additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $26,250.00;
- reasonable attorney's fees from Defendants, jointly and severally, in the amount of $2,600.00;
- costs from Defendants, jointly and severally, in the amount of $940.00; and
- post-judgment interest from Defendants, jointly and severally, on the amounts awarded from the date of final judgment until paid.[3]

---

[3] The applicable interest rate is "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 21st day of April 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE